Marshall, C. J.
All of these causes were admitted to this court upon the sustaining of motions to certify the records, and each and all of them were for violations of the Crabbe Act (Section 6212-13 et seq., General Code; 108 O. L., pt. 2, 1182); and were tried in the mayor’s court of Crestline, Crawford county. While the cases are in no way connected, and were in fact tried separately, the error proceedings have been carried on jointly, and the essential facts are sufficiently common to all the cases to permit them to be disposed of in a single opinion.
The first question for determination arises under the form of the warrant for search and seizure, it being claimed that the warrant was wholly void by *202 reason of alleged defects therein. It was attempted to draw the warrants in accordance with the form provided in Section 13485, General Code, and it will be found that that statute has no special reference to the Crabbe Act, but on the contrary has application to search warrants generally. The pertinent portion of that section reads :
“These are, therefore, to command you, in the name of the state of Ohio, with the necessary and proper assistance, to enter, in the daytime (or in the nighttime) * * *”
It was manifestly the legislative intent that the officer in preparing the warrant should strike out either the words “in the daytime” or “(or in the nighttime).” In the evidence found in the records of these cases the officer inadvertently left both phrases in the warrant, and the question is therefore presented whether by reason of the fact of both phrases being left in the warrant the warrant is thereby rendered null and void.
By reference to Section 13484, General Code, it will be found that—
“The command of the warrant shall be that the search be made in the daytime, unless there is urgent necessity for a search in the night, in which case a search in the night may be ordered.”
By reference to the affidavit which was filed to obtain the issuance of the search warrant it is found that thé printed form of affidavit contained the following printed language, “and that there is urgent necessity for the search therefor to be made in the night,” but these words were stricken out by the affiant and no showing was therefore made of any necessity for this search being made otherwise than *203 in the daytime. The record indicates that the search was in fact made in the daytime. Whatever may have been the legislative intent in throwing special protection around the property of persons during the night season, and showing special consideration for such property in the night season, it is very clear that no violence was done to that legislative intent in the instant cases. For this reason the objection must be regarded as a purely technical one. Aside from its purely technical character, however, it is difficult to find any possible invalidity in the warrant by reason of the neglect or inadvertence of the officer preparing the warrant. The carelessness of the officer is of course to be condemned, but the validity of his process should not be overthrown on purely technical grounds where no possible injury has resulted. Such an imperfect warrant should not be employed to make repeated searches in the day túne and in the nighttime, neither should it be regarded as proper alternative process giving to the officer discretion to execute the same either in the daytime or nighttime, but, on the contrary, since it is recognized that more urgent necessity should exist for a search in the night season, the officer should in all cases of doubt employ the milder process. We have thus entered into a discussion of this matter at some length because it has been brought officially to our attention that the same mistake has occurred in other instances, and inasmuch as it may be assumed that the same carelessness may occur again it is not improper to lay down a rule to govern such experiences. It being found that the process was lawful, it follows that all the evidence obtained thereby was properly admissible in *204 evidence, that the convictions thereon by the mayor should be affirmed, and that the Court of Appeals erred in reversing the same.
Even if the searches had been grossly irregular, it would not follow that the evidence thus obtained would be inadmissible, or that the convictions based thereon should be reversed. It is the contention of counsel for the accused in each of these cases that in all cases the searches were of bona fide private residences. It is not doubted that they were in fact dwelling houses, and the question arises under the peculiar facts of the cases whether they were “bona fide private residences” within the meaning of Sections 6212-16 and 6212-27, General Code. Section 6212-16 (108 O. L., pt. 2, 1183) provides:
“No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as store, shop, saloon, restaurant, hotel or boarding house.”
Section 6212-27 (109 O. L., 6) provides:
“And no place shall be regarded as a bona fide, private residence under the laws prohibiting the liquor traffic, wherein liquors are possessed which have been illegally manufactured or obtained.”
In the case of Bosanski v. State, 106 Ohio St., 442, 140 N. E., 370, this court in the fourth paragraph of the syllabus declared that irregular process resulting in seizure, or seizure without process, would not void the seizure “unless the seizure was made in a bona fide private dwelling.” We still adhere to that doctrine, but it seems necessary to further elaborate thereon. Under the provisions of the see *205 tions last above quoted the facts in the instant cases clearly show that while dwelling houses were searched, they were not that character of bona fide dwellings or residences which were entitled to the protection of those statutes, for the following reasons: First, in some of the cases there is evidence tending to show unlawful sales; second, in some of the eases there is evidence tending to show that the dwellings were used as shops; third, in some of the cases the evidence tends to show that liquors were found which had been illegally manufactured. It is quite clear that the Legislature did not intend to guard all places of human habitation against searches, and the records of the instant cases disclose that they come within the provisions of the exceptions contained in the legislative provisions. There is nothing in the syllabus of the Rosmski case, supra, to justify the inference that a still, either in operation or idle, or dismantled, whether kept in plain view or concealed, is inadmissible in evidence because it is found in a dwelling house where a family resides, if liquors are unlawfully possessed therein, or unlawfully sold therein, or lawfully or unlawfully manufactured therein. The mere fact of the manufacture of intoxicating liquors, whether in the cellar or the garret, or in any other room of the house, clearly constitutes the dwelling a shop. The Century Dictionary defines the word “shop” as follows:
“A room or building in which the making, preparing, or repairing of any article is carried on, or in which any industry is pursued; * * * the place where anything is made; the producing place or source.”
*206 We again refer to the principles declared in the Rosanshi case to the effect that contraband property, wherever found and however obtained, is admissible as competent evidence against the person in whose possession it is found, and the principles declared in that case clearly apply to stills or other “property designed for the manufacture of liquor, intended for use in violation of law or which has been so used.” The quoted words are found in Section 6212-16, General Code, which declares all such property contraband.
For the foregoing reasons the judgments of the Court of Appeals in all eases are reversed and the convictions in the mayor’s court of Crestline are affirmed.

Judgments reversed.

Wanamáker, Robinson, Jones, Matthias, Day and Allen, JJ., concur.